**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANDREW MARSO,<br><br>    Plaintiff,<br><br>v.<br><br>SAFESPEED, LLC,<br><br>    Defendant. | Case No. _____<br><br><br>**COMPLAINT-CLASS ACTION** |

Andrew Marso, an individual Plaintiff, individually and on behalf of a Class defined below of similarly situated persons, alleges the following against Defendant SafeSpeed, LLC ("SafeSpeed"), based upon personal knowledge and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## PARTIES

1. SafeSpeed is a company that provides red light camera technology.

2. Plaintiff is a Kansas resident who is disabled within the meaning of the Americans with Disabilities Act ("ADA") and has been issued a Disability Identification Placard Number by the Kansas Department of Revenue.

## JURISDICTION AND VENUE

3. This Court has specific personal jurisdiction over SafeSpeed and original jurisdiction over Plaintiff's claims.

4. Plaintiff Andrew Marso is an individual who resides in, and whose principal place of residence is, Johnson County, Kansas.

5. This Court has subject-matter jurisdiction over the ADA claim pursuant to 28 U.S.C. § 1331, because the claim arises under federal law. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the common law claims because all claims alleged herein form part of the same case or controversy.

6. This Court has specific personal jurisdiction over SafeSpeed because it regularly conducts business in Kansas by causing notices of violation to be mailed into Kansas and acquiring registration information from the Kansas Department of Revenue, and because SafeSpeed's purposeful establishment of significant contact with Kansas gave rise to Plaintiff's cause of action.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and the injuries Plaintiff has suffered or will suffer occurred in Kansas.

## GENERAL ALLEGATIONS

8. SafeSpeed provides red light enforcement systems to more than 30 municipalities in Illinois, pursuant to certain written agreements between SafeSpeed and those municipalities.[1]

9. SafeSpeed claims to provide the service of increasing road safety and decreasing the cost of administrative hearings.[2]

10. SafeSpeed uses a combination of magnetic sensors, modular cameras, 3D radar, and LED strobe lights to detect speeding and red-light violations.

11. SafeSpeed uses wide angle cameras to capture images of vehicles that violate speeding and red-light laws.

---

[1] https://safespeedllc.com/about/ (last visited Oct. 8, 2019).
[2] https://safespeedllc.com/solutions/ (last visited Oct. 8, 2019).

12. Violation data and images are stored in a computer mounted on a pole and transferred to a data center.

13. If an image of a violation is clear enough to read a license plate, SafeSpeed retrieves vehicle registration information connected to the license plate on the individual that sped or committed a red-light violation.

14. Under its written agreements with the Illinois municipalities, SafeSpeed has and assumes the obligation of retrieving registered vehicle owner information and correctly matching the license plate with the correct vehicle owner.

15. SafeSpeed then prepares, prints, and mails a notice to the address connected to the license plate in question ("Notice of Violation").

16. SafeSpeed has installed cameras in over 30 Illinois municipalities, and these municipalities have used SafeSpeed to ticket drivers from states outside of Illinois.

17. One of the stated purposes of SafeSpeed's agreements with the municipalities is to benefit the public health, safety, and welfare.

18. SafeSpeed's operations affect travel, transportation, and commerce between Kansas and Illinois.

19. In June 2019, Plaintiff received a Notice of Violation from SafeSpeed for running a red light in North Riverside, Illinois on May 23, 2019.

20. Plaintiff was not in Illinois on May 23, 2019.

21. The Notice of Violation included a photograph of a truck running a red light.

22. The truck in the photograph is not owned by, and has never been driven by, the Plaintiff.

23. The license plate number on the truck was not the same or similar to the Plaintiff's license plate number.

24. Plaintiff spent a significant amount of time researching and disputing his erroneously-issued Notice of Violation before it was finally dismissed.

25. Some time before receiving the Notice of Violation, Plaintiff received a Disabled Parking Placard from the Kansas Department of Revenue.

26. To receive a Disabled Parking Placard, an individual must be considered to be disabled.

27. Each Disabled Parking Placard has a corresponding Disabled Identification Placard Number.

28. Disabled Identification Placard Numbers are completely separate from license plate numbers.

29. SafeSpeed's license plate database ("Database") includes the Disabled Identification Placard Numbers for Kansas drivers with disabilities. Upon information and belief, the Disabled Identification Placard Numbers (or their equivalent) issued by other states and local governments throughout the United States are likely included in the Database.

30. Because the Database includes Disabled Identification Placard Numbers, when a vehicle that has a license plate with the same numbers as a Disabled Identification Placard Number commits a violation, the Kansas resident with the corresponding Disabled Identification Placard Number receives an erroneous Notice of Violation. Upon information and belief, similar issues may have arisen and could arise for citizens of other states.

4

31. SafeSpeed has wrongly included in the Database the Disabled Identification Placard Numbers of disabled Kansans that are issued by the Kansas Department of Revenue, as well as, upon information and belief, the Disabled Identification Placard Numbers (or their equivalent) issued by other state and local governments throughout the United States. SafeSpeed continues to discriminate against individuals with disabilities by failing to make reasonable modifications in policies, practices, and procedures to correct the problems in the Database.

32. Unless SafeSpeed is required to stop including the Disabled Identification Placard Numbers in the Database going forward, numerous individuals with disabilities across Kansas and the rest of the United States are threatened with irreparable harm in the form of wrongful criminal citations, impaired driving records, and other harm.

## CLASS ALLEGATIONS

33. Plaintiff brings this action on behalf of himself and those similarly situated both across the United States and within Kansas.

34. In accordance with Federal Rules of Civil Procedure 23, Plaintiff brings this case as a class action on behalf of a Class including all persons residing in the United States who are disabled within the meaning of the ADA and have been issued a Disability Identification Placard Number or other disability-related identification number by their respective state government or agency that has been erroneously included in the database by SafeSpeed.

35. Additionally, Plaintiff brings this case as a class action on behalf of a subclass of the following: all persons in Kansas who are disabled within the meaning of the ADA and have been issued a Disability Identification Placard Number by the Kansas Department of Revenue.

36. Class certification is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (2), and/or (3), and (c)(4).

37. The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

38. There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether the failure to properly maintain the Database and the erroneous issuance of Notices of Violation constitutes a breach of SafeSpeed's contractual obligations with the public as third party beneficiaries of SafeSpeed's agreements with the municipalities; whether SafeSpeed was negligent in failing to properly maintain the Database and issuing erroneous Notices of Violation; whether SafeSpeed failed to abide by the Americans with Disabilities Act; and whether the Class members are entitled to damages.

39. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies and practices of SafeSpeed as alleged herein, and all members of the Class are similarly affected by SafeSpeed's wrongful conduct.

40. Plaintiff will fairly and adequately represent the Class and has retained counsel competent in the prosecution of class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

41.     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.  Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

42.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.  Likewise, particular issues, including those listed in paragraph 37, are appropriate for certification under Rule 23(c)(4), because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interest therein.

43.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I – Breach of Contract

41.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

42.     The public, including Plaintiff and the Class, is an intended beneficiary of the agreements between SafeSpeed and the more-than 30 Illinois municipalities that utilize SafeSpeed.

43. As a third-party beneficiary of the agreements, Plaintiff and the Class have a right to sue SafeSpeed for breach of the agreements.

44. The agreements require SafeSpeed to process Notices of Violation and retrieve the correct registered vehicle owner information.

45. To the best of Plaintiff's knowledge, the agreements between SafeSpeed and the municipalities are valid, enforceable contracts.

46. To the best of Plaintiff's knowledge, the municipalities have substantially performed under the agreements.

47. As set forth above, SafeSpeed breached the agreements by failing to use due care when processing Notices of Violation and acquiring the vehicle registration, failing to retrieve the correct registered vehicle owner information, and by failing to address the Notices of Violation to the correct alleged violators, resulting in Plaintiff and others being falsely accused of crimes they did not commit.

48. As a result of SafeSpeed's breach, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT II – Negligence

49. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

50. SafeSpeed owed a duty to Plaintiff, the Class, and the public to use and exercise reasonable and due care in maintaining the Database.

51. SafeSpeed owed a duty to Plaintiff, the Class, and the public to properly confirm the identity of alleged violators before issuing Notices of Violation.

52. SafeSpeed knew or should have known that the Database contained inaccurate information.

53. SafeSpeed knew that a failure to maintain the Database in a reasonable manner could result in erroneously-issued Notices of Violation and was therefore charged with a duty to adequately maintain the Database.

54. SafeSpeed breached its duties to Plaintiff, the Class, and the public by failing to exercise reasonable care in maintaining the Database.

55. SafeSpeed breached its duties to Plaintiff, the Class, and the public by issuing erroneous Notices of Violation.

56. As a direct and proximate result of SafeSpeed's negligent conduct, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT III – Violation of the Americans with Disabilities Act

57. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

58. Plaintiff brings a claim pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, to remedy discrimination on the basis of a disability.

59. Plaintiff and the Class are individuals who are disabled within the meaning of the ADA.

60. SafeSpeed is a public accommodation as defined by 42 U.S.C. § 12181(7)(F).

61. SafeSpeed has denied to individuals with disabilities the service that it offers to the general public: the ability to not be wrongfully ticketed.

62. SafeSpeed discriminated against individuals with disabilities by failing to ensure that individuals with disabilities were not wrongfully ticketed by its system.

63. SafeSpeed continues to discriminate against individuals with disabilities, including Plaintiff and the Class, by failing to remedy the problems with its Database.

64. Plaintiff and the Class are without adequate remedy at law for SafeSpeed's violations of the ADA and is suffering irreparable harm. The hardships to the Plaintiff and the class significantly outweigh any possible hardships to SafeSpeed, so a remedy in equity is warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, as applicable, respectfully requests that the Court enter judgment in their favor and against SafeSpeed, as follows:

1. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

2. That the Court grant permanent, prospective injunctive relief to prohibit SafeSpeed from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. That the Court award Plaintiff and Class members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

4. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by SafeSpeed as a result of its unlawful acts, omissions, and practices;

5. That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

6. That Plaintiff be granted the declaratory relief sought herein;

7. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

8. That the Court allow as part of damages and award to Plaintiff their expenses of litigation and attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505;

9. That the Court award pre- and post-judgment interest at the maximum legal rate; and

10. That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

> FOULSTON SIEFKIN LLP
>
> By: *s/ Scott C. Nehrbass*
> Scott C. Nehrbass, KS #16285
> 32 Corporate Woods, Suite 600
> 9225 Indian Creek Parkway
> Overland Park, KS  66210-2000
> Tel. (Direct): (913) 253-2144
> Fax: (866) 347-1472
> Email:  snehrbass@foulston.com
>
> Jeremy E. Koehler, KS #28217
> 1551 N. Waterfront Parkway, Suite 100
> Wichita, Kansas 67206-4466
> Tel. (Direct): (316) 291-9728
> Fax: (888) 889-9614
> Email: jkoehler@foulston.com
>
> ATTORNEYS FOR PLAINTIFF