**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANDREW MARSO,<br><br>  Plaintiff,<br><br>v.<br><br>SAFESPEED, LLC and VILLAGE OF NORTH RIVERSIDE, ILLINOIS,<br><br>  Defendants. | Case No. 19-cv-02671-KHV-KGG<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT** |

  Andrew Marso, an individual Plaintiff, individually and on behalf of a Class defined below of similarly situated persons, brings this First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and alleges the following against Defendants SafeSpeed, LLC ("SafeSpeed") and Village of North Riverside, Illinois (the "Village"), based upon personal knowledge and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

**PARTIES**

  1. SafeSpeed is a company that provides red light camera technology.

  2. The Village is a municipality in Cook County, Illinois.

  3. Plaintiff is a Kansas resident who is disabled within the meaning of the Americans with Disabilities Act ("ADA") and has been issued a Disability Identification Placard Number by the Kansas Department of Revenue.

  4. Class members are citizens of all states and territories in the United States who are disabled within the meaning of the ADA and have been issued a Disability Identification Placard

Number or other disability-related identification number by their respective state or territory government or agency.

## JURISDICTION AND VENUE

5. This Court has specific personal jurisdiction over SafeSpeed and the Village, and original jurisdiction over Plaintiff's claims.

6. Plaintiff Andrew Marso is an individual who resides in, and whose principal place of residence is, Johnson County, Kansas.

7. This Court has subject-matter jurisdiction over the ADA claim pursuant to 28 U.S.C. § 1331, because the claim arises under federal law. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the common law claims because all claims alleged herein form part of the same case or controversy.

8. In addition, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the matter is between citizens of different states. The amount in controversy includes the value of the injunctive relief sought.

9. This Court has specific personal jurisdiction over SafeSpeed and the Village because they regularly conduct business in Kansas by causing notices of violation to be mailed into Kansas, and because SafeSpeed and the Village's purposeful establishment of significant contact with Kansas gave rise to Plaintiff's cause of action. SafeSpeed and the Village have caused notices of violation to be mailed into Kansas even when the recipient has not traveled to Illinois.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and the injuries Plaintiff has suffered or will suffer occurred in Kansas.

## GENERAL ALLEGATIONS

11. SafeSpeed provides red light enforcement systems to more than 30 municipalities in Illinois, pursuant to certain written agreements between SafeSpeed and those municipalities.[1]

12. SafeSpeed claims to provide the service of increasing road safety and decreasing the cost of administrative hearings.[2]

13. SafeSpeed uses a combination of magnetic sensors, modular cameras, 3D radar, and LED strobe lights to detect speeding and red-light violations.

14. SafeSpeed uses wide angle cameras to capture images of vehicles that violate speeding and red-light laws.

15. Violation data and images are stored in a computer mounted on a pole and transferred to a data center.

16. If an image of a violation is clear enough to read a license plate, SafeSpeed retrieves vehicle registration information connected to the license plate on the individual that sped or committed a red-light violation.

17. Under its written agreements with the Illinois municipalities, SafeSpeed has and assumes the obligation of retrieving correct registered vehicle owner information and correctly matching the license plate with the correct vehicle owner.

18. SafeSpeed prepares, prints, and mails a notice to the address connected to the registered vehicle owner that SafeSpeed is supposed to have correctly identified by using the license plate in question ("Notice of Violation").

---

[1] https://safespeedllc.com/about/ (last visited Oct. 8, 2019).
[2] https://safespeedllc.com/solutions/ (last visited Oct. 8, 2019).

19. Under its written agreements with the Illinois municipalities, SafeSpeed is financially incentivized and gets paid by sending out Notices of Violation and processing payments received in response to such notices.

20. The Village and other municipalities are financially incentivized for SafeSpeed to send out Notices of Violation.

21. SafeSpeed has recently been a target of media and law enforcement scrutiny for encouraging municipalities to issue more Notices of Violation.[3]

22. SafeSpeed has installed cameras in over 30 Illinois municipalities, including the Village, and these municipalities have used SafeSpeed to ticket drivers from states outside of Illinois.

23. One of the stated purposes of SafeSpeed's agreements with the municipalities is to benefit the public health, safety, and welfare.

24. SafeSpeed's operations affect travel, transportation, and commerce between Kansas and Illinois.

25. In June 2019, Plaintiff received a Notice of Violation from SafeSpeed and the Village for running a red light in the Village on May 23, 2019.

26. Plaintiff was not in the Village, or even Illinois, on May 23, 2019.

27. The Notice of Violation included a photograph of a truck running a red light.

28. The truck in the photograph is not owned by, and has never been driven by, the Plaintiff.

---

[3] Robert Herguth & Mark Brown, *SafeSpeed Rep Under Federal Scrutiny Push Oak Lawn to Issue More Red-Light-Camera Tickets*, CHI. SUN-TIMES (Nov. 12, 2019), https://chicago.suntimes.com/2019/11/12/20955538/safespeed-john-osullivan-oak-lawn-red-light-camera-tickets-nikki-zollar-federal-investigation.

29. The license plate number on the truck was not the same or similar to the Plaintiff's license plate number.

30. Plaintiff spent a significant amount of time researching and disputing his erroneously-issued Notice of Violation before it was finally dismissed.

31. Some time before receiving the Notice of Violation, Plaintiff received a Disabled Parking Placard from the Kansas Department of Revenue. *See* Ex. A.

32. To receive a Disabled Parking Placard, an individual must be considered to be disabled.

33. Portions of Plaintiff's hands and feet were removed in 2004 after Plaintiff contracted bacterial meningitis.[4] This physical impairment has substantially limited several major life activities including, but not limited to, walking, standing, and performing manual tasks. *See* Ex. C.

34. Each Disabled Parking Placard has a corresponding Disabled Identification Placard Number.

35. Disabled Identification Placard Numbers are completely separate from license plate numbers.

36. The Village gave SafeSpeed authorization to electronically obtain registration information about vehicles captured by red light camera systems from the Illinois Secretary of State and Nlets, a network with motor vehicle and driver data from the United States. Lai Decl. ¶ 14.

37. Due to SafeSpeed's failure to either (1) properly query the Illinois Secretary of State and Nlets, or (2) properly verify information received from the Illinois Secretary of State and Nlets, when a vehicle that has a license plate with the same numbers as a Disabled Identification Placard

---

[4] ANDY MARSO, WORTH THE PAIN: HOW MENINGITIS NEARLY KILLED ME—THEN CHANGED MY LIFE FOR THE BETTER (2013).

Number commits a violation, the Kansas resident with the corresponding Disabled Identification Placard Number receives an erroneous Notice of Violation. Upon information and belief, similar issues may have arisen and could arise for citizens of other states.

38. According to SafeSpeed's CEO, SafeSpeed caused its subcontractor to print and mail a Notice of Violation to the Plaintiff in Kansas. Lai Decl. ¶ 12.

39. Although SafeSpeed causes its subcontractor to print and mail the Notice of Violation, the Village's name appears on the Notice of Violation.

40. The Notice of Violation is signed by an employee of the Village.

41. SafeSpeed continues to discriminate against individuals with disabilities by failing to make reasonable modifications in policies, practices, and procedures to correct the problems in its Notice of Violation issuance process.

42. Unless SafeSpeed is required to stop sending Notices of Violations based on Disability Identification Placard Numbers, numerous individuals with disabilities across Kansas and the rest of the United States are threatened with irreparable harm in the form of wrongful criminal citations, impaired driving records, and other harm.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of himself and those similarly situated both across the United States and within Kansas.

44. In accordance with Federal Rules of Civil Procedure 23, Plaintiff brings this case as a class action on behalf of a Class including all persons residing in the United States who are disabled within the meaning of the ADA and have been issued a Disability Identification Placard

Number or other disability-related identification number by their respective state government or agency.

47. Additionally, Plaintiff brings this case as a class action on behalf of a subclass of the following: all persons in Kansas who are disabled within the meaning of the ADA and have been issued a Disability Identification Placard Number by the Kansas Department of Revenue ("Kansas Subclass").

46. Additionally, Plaintiff brings this case as a class action on behalf of a subclass of the following: all individuals who are disabled within the meaning of the ADA and have received a wrongfully-issued Notice of Violation ("Wrongfully-Issued Subclass").

47. Class certification is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (2), and/or (3), and (c)(4).

48. The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

49. There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether SafeSpeed was negligent in failing to properly query the Illinois Secretary of State and Nlets and properly verify information received from the Illinois Secretary of State and Nlets; whether SafeSpeed was negligent in issuing erroneous Notices of Violation; whether SafeSpeed failed to abide by the Americans with Disabilities Act; whether the Village failed to abide by the Americans with Disabilities Act; whether SafeSpeed and the

7

Village were malicious in their wrongful prosecution of Plaintiff and the Wrongfully-Issued Class; and whether the Class members are entitled to damages.

50. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies and practices of SafeSpeed and the Village as alleged herein, and all members of the Class are similarly affected by SafeSpeed and the Village's wrongful conduct.

51. Plaintiff will fairly and adequately represent the Class and has retained counsel competent in the prosecution of class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

52. Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

53. In the alternative, certification under Rule 23(b)(2) is warranted because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Likewise, particular issues, including those listed in paragraph 49, are appropriate for

certification under Rule 23(c)(4), because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interest therein.

54. In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I – Violation of Section 12181 of the Americans with Disabilities Act
### (Against SafeSpeed)

55. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

56. This count is brought on behalf of all members of the Class.

57. Plaintiff brings a claim pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, to remedy discrimination on the basis of a disability.

58. Plaintiff and the Class are individuals who are disabled within the meaning of the ADA.

59. SafeSpeed is a public accommodation as defined by 42 U.S.C. § 12181(7)(F).

60. SafeSpeed has denied to individuals with disabilities the service that it offers to the general public: the ability to not be wrongfully ticketed.

61. SafeSpeed discriminated against individuals with disabilities by failing to ensure that individuals with disabilities were not wrongfully ticketed by its system.

62. SafeSpeed has discriminated and continues to discriminate against Plaintiff and the Class by creating an environment in which individuals with disabilities are significantly more likely to receive wrongfully-issued Notices of Violation than individuals who do not have disabilities.

63. SafeSpeed continues to discriminate against individuals with disabilities, including Plaintiff and the Class, by failing to remedy the problems with its querying and verification process.

64. Plaintiff and the Class are without adequate remedy at law for SafeSpeed's violations of the ADA and are suffering irreparable harm. The hardships to the Plaintiff and the class significantly outweigh any possible hardships to SafeSpeed, so a remedy in equity is warranted.

### COUNT II – Violation of Section 12132 of the Americans with Disabilities Act
### (Against the Village)

65. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

66. This count is brought on behalf of all members of the Class.

67. Plaintiff brings a claim pursuant to the ADA, 42 U.S.C. § 12132, to remedy discrimination on the basis of a disability.

68. Plaintiff and the Class are individuals who are disabled within the meaning of the ADA.

69. The Village is a public entity as defined by 42 U.S.C. § 12131(1)(A).

70. The Village has discriminated against Plaintiff and the Class by failing to properly confirm the identity of alleged violators before issuing Notices of Violation.

71. The Village has discriminated and continues to discriminate against Plaintiff and the Class by creating an environment in which individuals with disabilities are significantly more likely to receive wrongfully-issued Notices of Violation than individuals who do not have disabilities.

72. The Village continues to discriminate against individuals with disabilities, including Plaintiff and the Class, by failing to ensure that its agent, SafeSpeed, remedy the problems with its querying and verification process.

73. Plaintiff and the Class are without adequate remedy at law for the Village's violations of the ADA and are suffering irreparable harm. The hardships to the Plaintiff and the class significantly outweigh any possible hardships to the Village, so a remedy in equity is warranted.

## COUNT III – Negligence
### (Against SafeSpeed and the Village)

74. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

75. This count is brought upon all members of the Wrongfully-Issued Subclass.

76. SafeSpeed and the Village owed a duty to Plaintiff, the Class, and the public to (1) properly query the Illinois Secretary of State and Nlets, and (2) properly verify information received from the Illinois Secretary of State and Nlets.

77. SafeSpeed and the Village owed a duty to Plaintiff, the Class, and the public to properly confirm the identity of alleged violators before issuing Notices of Violation.

78. SafeSpeed and the Village knew that a failure to properly confirm the identity of alleged violators before issuing Notices of Violation could result in erroneously-issued Notices of Violation and was therefore charged with a duty to (1) properly query the Illinois Secretary of State and Nlets, and (2) properly verify information received from the Illinois Secretary of State and Nlets.

79. SafeSpeed and the Village breached their duties to Plaintiff, the Class, and the public by failing to properly confirm the identity of alleged violators before issuing Notices of Violation.

80. SafeSpeed and the Village breached their duties to Plaintiff, the Class, and the public by issuing erroneous Notices of Violation.

81. As a direct and proximate result of SafeSpeed's negligent conduct, Plaintiff and the Wrongfully-Issued Subclass have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT IV – Malicious Prosecution
### (Against SafeSpeed and the Village)

82. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

83. This count is brought upon all members of the Wrongfully-Issued Subclass whose violations were dismissed.

84. The Village and SafeSpeed caused wrongfully-issued Notices of Violation to be mailed to Plaintiff and the Wrongfully-Issued Subclass.

85. The Village and SafeSpeed acted without probable cause in causing the Notices of Violation to be sent to the Plaintiff and the Wrongfully-Issued Subclass.

86. The Village and SafeSpeed acted with reckless disregard and malice in causing the Notices of Violation to be sent to the Plaintiff and the Wrongfully-Issued Subclass.

87. The Village dismissed the Notices of Violation for the Plaintiff and some members Wrongfully-Issued Subclass. *See* Ex. C.

88. The Plaintiff and the Wrongfully-Issued Subclass sustained damages. Specifically, the Plaintiff and the Wrongfully-Issued Subclass spent substantial time and effort getting their respective wrongfully-issued Notices of Violation dismissed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, as applicable, respectfully requests that the Court enter judgment in their favor and against SafeSpeed, as follows:

1. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

2. That the Court grant permanent, prospective injunctive relief under all four claims to prohibit SafeSpeed and the Village from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. That the Court award Plaintiff and Class members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

4. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by SafeSpeed and the Village as a result of their unlawful acts, omissions, and practices;

5. That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

6. That Plaintiff be granted the declaratory relief sought herein;

7. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

8. That the Court allow as part of damages and award to Plaintiff their expenses of litigation and attorneys' fees pursuant to 42 U.S.C. § 12205, 42 U.S.C. § 12133, and 28 C.F.R. § 36.505;

9. That the Court award pre- and post-judgment interest at the maximum legal rate; and

10. That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

FOULSTON SIEFKIN LLP

By: *s/ Scott C. Nehrbass*
    Scott C. Nehrbass, KS #16285
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS  66210-2000
Tel. (Direct): (913) 253-2144
Fax: (866) 347-1472
Email:  snehrbass@foulston.com

Jeremy E. Koehler, KS #28217
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Tel. (Direct): (316) 291-9728
Fax: (888) 889-9614
Email: jkoehler@foulston.com

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

This is to certify that on January 10, 2020, the above and foregoing was electronically filed with the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

    *s/ Scott C. Nehrbass*