**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ANDREW MARSO, individually and** | ) | |
| **on behalf of all similarly situated persons,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 19-2671-KHV** |
| | ) | |
| **SAFESPEED, LLC, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Andrew Marso brings individual and putative class action claims against Safespeed, LLC and the Village of North Riverside, Illinois for violations of Kansas law and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Amended Complaint (Doc. #15) filed January 10, 2020. This matter is before the Court on Defendant Safespeed, LLC's Motion To Dismiss Amended Complaint (Doc. #19) filed February 21, 2020, and Defendant Village Of North Riverside, Illinois' Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #34) filed April 8, 2020. For reasons stated below, the Court overrules both motions.

**Factual And Procedural Background**

**I.      Amended Complaint**

Plaintiff's amended complaint alleges as follows:

Plaintiff is a resident of Kansas and a disabled individual within the meaning of the ADA. The Village of North Riverside (the "Village") is a municipality in Illinois. SafeSpeed is an Illinois limited liability company that provides red light enforcement systems to more than 30 municipalities in Illinois, including the Village. SafeSpeed offices and operations are in Illinois,

and it does not provide services to municipalities outside of Illinois.   SafeSpeed operations affect travel, transportation and commerce between Kansas and Illinois.

When a driver speeds or runs a red light, the SafeSpeed system captures an image of the vehicle.   If the image is clear, SafeSpeed (with authorization from the Village) uses the license plate number to identify the owner of the vehicle, using information from the Illinois Secretary of State and Nlets, a network with motor vehicle and driver data.   A SafeSpeed subcontractor then prepares, prints and mails a violation notice to the owner.   SafeSpeed and the Village have a financial incentive to send out violation notices.

The Kansas Department of Revenue issues Disabled Parking Placards to disabled drivers. Each Disabled Parking Placard has a number which is separate from the license plate number of the disabled driver.   Plaintiff has a Disabled Identification Placard Number for his vehicle.

On May 23, 2019, a truck with a Kansas license plate ran a red light in the Village.   Its license plate number was identical to plaintiff's Disabled Identification Placard Number, and SafeSpeed and the Village mistakenly issued the violation notice to plaintiff.   Plaintiff disputed the notice and the Village dismissed it.

Plaintiff believes that he may not be the only disabled individual who has mistakenly received a violation notice from SafeSpeed and the Village.   He alleges that by failing to properly verify vehicle information, SafeSpeed sends erroneous violation notices to disabled Kansans, and perhaps residents of other states as well.

Plaintiff alleges that SafeSpeed discriminates against individuals with disabilities by failing to make reasonable modifications in policies, practices and procedures to correct this problem. He asserts that unless the Court requires SafeSpeed to cease sending violation notices based on Disability Identification Placard Numbers, disabled individuals in Kansas and other states could

suffer irreparable harm (<u>i.e.</u>, wrongful criminal citations, impaired driving records, etc.).

Plaintiff seeks to represent a class that includes all persons residing in the United States who are disabled within the meaning of the ADA and whose state government or agency has issued Disability Identification Placard Numbers or other disability-related identification numbers.   On behalf of the class, plaintiff asserts that: (1) SafeSpeed violated Section 12182 of the ADA and (2) the Village violated of Section 12132 of the ADA.

Plaintiff also seeks to represent two subclasses: (1) persons in Kansas who have Disability Identification Placard Numbers (the "Kansas Subclass")[1] and (2) individuals who have received wrongfully-issued violation notices (the "Wrongfully-Issued Subclass").   On behalf of the Wrongfully-Issued Subclass, plaintiff asserts that SafeSpeed and the Village (1) were negligent and (2) committed malicious prosecution.[2]

Plaintiff asserts that this Court has federal question jurisdiction based on the ADA.[3]   As to personal jurisdiction, plaintiff does not allege that the Court has general jurisdiction over defendants.   As to specific jurisdiction, plaintiff alleges as follows:

---

[1]      Although plaintiff seeks to represent a "Kansas Subclass," he apparently does not assert a separate claim on behalf of the Kansas Subclass.

[2]      Although plaintiff asserts that he brings this action on behalf of himself and the class, he does not specifically assert any individual claims.   All four counts in the amended complaint are on behalf of the class or a subclass.   <u>See</u> <u>Amended Complaint</u> (Doc. #15) at 10–12.

[3]      Plaintiff asserts that the Court has both federal question jurisdiction based on the ADA and diversity jurisdiction.   Defendants argue that plaintiff cannot meet the diversity jurisdiction requirement that the amount in controversy be greater than $75,000.   Because the Court has federal question jurisdiction, it does not address the parties' arguments regarding diversity jurisdiction at this time.

> This Court has specific personal jurisdiction over SafeSpeed and the Village because they regularly conduct business in Kansas by causing notices of violation to be mailed into Kansas, and because SafeSpeed and the Village's purposeful establishment of significant contact with Kansas gave rise to Plaintiff's cause of action. SafeSpeed and the Village have caused notices of violation to be mailed into Kansas even when the recipient has not traveled to Illinois.

<u>Amended Complaint</u> (Doc. #15) at 2.

## II.   <u>Motion To Dismiss By SafeSpeed</u>

SafeSpeed argues that the Court should dismiss plaintiff's amended complaint for lack of personal jurisdiction, misjoinder of parties, improper venue, failure to state a claim and, if the Court dismisses plaintiff's ADA claim, lack of diversity jurisdiction. SafeSpeed argues that the Court lacks personal jurisdiction because it does not have minimum contacts with Kansas. In addition, SafeSpeed asserts that under its contract with the Village, SafeSpeed conducts only an initial review of potential violations and the Village has final decision-making authority regarding who receives a violation notice. After the Village makes the final decision, a SafeSpeed subcontractor prints and mails the notices. Accordingly, SafeSpeed argues that the Village—not it—is the proper defendant in this case.

In support of its motion to dismiss, SafeSpeed provides a declaration from its Chief Executive Officer Chris Lai, which states that SafeSpeed conducts all of its business in Illinois and has no dealings with Kansas. SafeSpeed also provides the following documents: (1) its contract with the Village; (2) an authorization from the Village to obtain motor vehicle data from Nlets; and (3) a copy of the violation notice sent to plaintiff, which states that the notice is from the Village and does not include SafeSpeed's name.

## III.   <u>Motion To Dismiss By The Village</u>

The Village argues that the Court should dismiss plaintiff's amended complaint for lack of

personal jurisdiction, improper venue and, as to plaintiff's request to certify a class, failure to state a claim.[4]   The Village asserts that it does not have minimum contacts with Kansas and that in enforcing its traffic laws in Illinois, the Village did not anticipate being haled into court in Kansas. The Village further asserts that requiring it to litigate in Kansas would offend traditional notions of fair play and substantial justice.   Finally, the Village claims that venue is improper in Kansas because a substantial portion of the events occurred in Illinois.

In support of its motion to dismiss, the Village provides a declaration from its Acting Administrator and Financial Director/Treasurer Susan Scarpiniti, which states that the Village dismissed the erroneous violation notice on an expedited timeline after one phone call from plaintiff.   Scarpiniti further states that to her knowledge, this situation has not happened before and was the result of a reporting error to SafeSpeed by the Kansas Secretary of State.   The Village also includes a copy of plaintiff's violation notice.

## **Analysis**

As noted, SafeSpeed and the Village separately urge the Court to dismiss plaintiff's claims for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., improper venue under Rule 12(b)(3), Fed. R. Civ. P., and failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.

A court without jurisdiction over the parties cannot render a valid judgment.   OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998).   Accordingly, before addressing the merits of the case, the Court must determine whether it has personal

---

[4]      The Village's brief addresses only personal jurisdiction, venue and class certification, and states that if the Court rejects its arguments on those issues, the Village purportedly "reserves its right" to file a motion to dismiss the individual counts of the amended complaint under Rule 12(b)(6).   See Defendant Village Of North Riverside, Illinois' Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #34) at 2.

jurisdiction over defendants.   See id.; see also First Magnus Financial Corp. v. Star Equity

Funding, LLC, No. 06-2426-JWL, 2007 WL 635312, at *4 (D. Kan. Feb. 27, 2007) (not addressing

merits of 12(b)(6) motion because court lacked personal jurisdiction).

**I.     Personal Jurisdiction**

Rule 12(b)(2), Fed. R. Civ. P., governs motions to dismiss for lack of personal jurisdiction.

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over defendants.

At this stage of the litigation, he need only make a prima facie showing and that burden is light.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069–70 (10th Cir. 2008); Wenz

v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).   To the extent that defendants' affidavits

do not controvert the well-pleaded allegations of the amended complaint, the Court accepts

plaintiff's allegations as true.   Wenz, 55 F.3d at 1505.   If defendants sufficiently challenge the

jurisdictional allegations, plaintiff must support them with competent proof of supporting facts.

Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989).   He may do so by demonstrating,

by affidavit or other written materials, facts that if true would support jurisdiction over defendants.

TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007).

At this stage, the Court resolves any factual disputes in favor of plaintiff.   Wenz, 55 F.3d at 1505.

Determining whether a federal court has personal jurisdiction over nonresident defendants

in a federal question case requires two steps.   First, the Court examines whether the applicable

statute potentially confers jurisdiction by authorizing service of process on defendants.   Peay v.

BellSouth Med. Ass't Plan, 205 F.3d 1206, 1209 (10th Cir. 2000).   The Court then determines

whether the exercise of jurisdiction comports with due process.   Id.

The relevant federal statute here—the ADA—does not provide for nationwide service of

process.   Diaz-Oropeza v. Riverside Red X, Inc., No. 11-2012-JTM, 2011 WL 2580167, at n.3

(D. Kan. June 28, 2011).   The Court therefore turns to Rule 4, Fed. R. Civ. P., which governs service of process in federal cases.   See Peay, 205 F.3d at 1210.   Under Rule 4(k)(1)(A), service of summons authorizes personal jurisdiction over defendants who are subject to jurisdiction in the state court where the district court is located—here, Kansas.   See Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp. 2d 1074, 1076 (D. Kan. 1998).

###### A.      Kansas Long-Arm Statute

The Kansas long-arm statute, K.S.A. § 60–308(b), determines whether defendants are subject to jurisdiction in Kansas state court.   Id.   Section 60–308(b)(1) sets out various acts which confer specific jurisdiction over nonresident defendants.   Specifically, it provides that any person who in person or through an agent commits one of the enumerated acts submits to personal jurisdiction for any cause of action arising from the commission of any of the acts.   Those acts, in relevant part, include the following:

(A) Transacting any business in this state;

(B) committing a tortious act in this state; * * *

(G) causing to persons or property in this state an injury arising out of an act or omission outside this state by the defendant if, at the time of the injury, either (i) The defendant was engaged in solicitation or service activities in this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed in this state in the ordinary course of trade or use; * * *

K.S.A. § 60–308(b)(1).[5]

The Court liberally construes Section 60–308(b) to allow personal jurisdiction over

---

[5]      The Kansas long-arm statute also confers general jurisdiction over nonresidents whose contacts with Kansas are "substantial, continuous and systematic."   K.S.A. § 60–308(b)(2). Plaintiff does not argue that the Court has general jurisdiction over defendants.

nonresident defendants to the fullest extent permitted by the Due Process Clause.   Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990).   Thus, for all practical purposes the inquiries are duplicative, and the Tenth Circuit permits the Court to proceed directly to the constitutional issue.   See Thermal Components Co. v. Griffith, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000); see also OMI Holdings, Inc., 149 F.3d at 1090.   Rather than skip the long-arm analysis, however, the Court analyzes the long-arm and due process issues in tandem.   See Echtinaw v. Lappin, No. 08-3011-KHV, 2009 WL 604131, at *7 n.10 (D. Kan. Mar. 9, 2009) (analyzing long-arm statute and due process in tandem).

To meet his prima facie burden to show personal jurisdiction, plaintiff must allege that defendants committed one of the acts enumerated in the Kansas long-arm statute.   In response to defendants' motions to dismiss, plaintiff focuses solely on due process.   The amended complaint, however, alleges that defendants "regularly conduct business in Kansas by causing notices of violation to be mailed into Kansas."   In other words, the amended complaint bases personal jurisdiction on either K.S.A. § 60–308(b)(1)(A), (B) or (G).   Defendants do not dispute that they cause violation notices to be mailed into Kansas.   Plaintiff has therefore met his prima facie burden of alleging personal jurisdiction under the Kansas long-arm statute and the Court may proceed to the due process inquiry.

### B.    Due Process

The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."   OMI Holdings, 149 F.3d at 1090.   The Court may exercise jurisdiction over nonresident defendants only if sufficient "minimum contacts" exist between defendants and the forum state.   See Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1233

(10th Cir. 2006).   Plaintiff may satisfy this standard by showing that defendants have "purposefully directed [their] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."   OMI Holdings, 149 F.3d at 1090–91 (quotations and citations omitted).   If plaintiff demonstrates sufficient minimum contacts, the Court must also consider whether exercising personal jurisdiction over defendants offends "traditional notions of fair play and justice," i.e. whether exercising jurisdiction is "reasonable" in light of the circumstances surrounding the case.   Id. at 1091 (quoting Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 113 (1987)).

### 1.   Minimum Contacts

Defendants assert that plaintiff has not adequately alleged that they have minimum contacts with Kansas, i.e. that they purposefully directed activities to residents of Kansas or purposefully availed themselves of the privilege of conducting activities in Kansas.[6]   In considering whether defendants purposefully directed activities toward Kansas, the Court examines both the quantity and quality of their Kansas contacts.   See OMI Holdings, 149 F.3d at 1092.   Plaintiff may demonstrate purposeful direction by showing that defendants committed (1) an intentional act that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state.   See Dudnikov, 514 F.3d at 1072.

### a.   Intentional Action

To demonstrate purposeful direction, plaintiff must first show that defendants committed

---

[6]     The Village asserts that it did not "purposefully direct" its activities at Kansas, and SafeSpeed asserts that it did not "purposefully avail" itself of the privilege of conducting activities in Kansas.   These formulations of the relevant test are interchangeable.   See Dental Dynamics, LLC v. Jolly Dental Grp., LLC, 946 F.3d 1223, 1229 n.3 (10th Cir. 2020).

an intentional act.  See Dudnikov, 514 F.3d at 1072.  As to SafeSpeed, plaintiff alleges that it entered into a contract with the Village, agreed to identify out-of-state vehicle owners and sent violation notices into other states, including Kansas.  As to the Village, plaintiff alleges that it entered into a contract with SafeSpeed, approved violation notices for out-of-state vehicles and sent violation notices into other states, including Kansas.  The primary focus, however, is on defendants' mailing of an erroneous violation notice to plaintiff in Kansas.  See Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1418 (10th Cir. 1988) (in proper circumstances, even single letter to forum state may meet due process standards).  Plaintiff's allegations with respect to such mailing are sufficient to satisfy the intentional action requirement.[7]

### b.    Expressly Aimed At Forum State

The second prong requires that plaintiff show that defendants aimed their intentional actions at the forum state.  See Dudnikov, 514 F.3d at 1072.  The "express aiming" test focuses on defendants' intentions, i.e. the "focal point" of their purposeful efforts, as opposed to where the alleged harm was actually felt.  Id. at 1074–75.  With respect to this test, the Tenth Circuit requires that the forum state be the "focal point of the tort," and not that defendants individually targeted a known forum resident.  Id. at 1074 n.9 (citations omitted).  Defendants assert that plaintiff can point to only one act which they directed to Kansas, i.e. the violation notice which

---

[7]    At this stage in the litigation, although plaintiff alleges that defendants sent wrongful notices to other out-of-state residents, the claims of unnamed class members are not relevant to whether the Court has personal jurisdiction over defendants.  See Orion Property Group, LLC v. Mark Hjelle, No. 17-2738-KHV, 2018 WL 6570495, n.10 (D. Kan. Dec. 13, 2018); Chernus v. Logitech, Inc., No. 17-673(FLW), 2018 WL 1981481, *3 (D.N.J. Apr. 27, 2018) (named plaintiff's claim must result from defendant's forum-related activities, not claims of unnamed members of proposed class who are not party to litigation absent class certification) (citations omitted); Tsan v. Seventh Generation, Inc., No. 15-0205-JST, 2015 WL 3826243, at *3 (N.D. Cal. June 17, 2015) (same) (citation omitted).

they sent to plaintiff in Kansas.   On this record, however, that violation notice demonstrates that defendants expressly aimed their conduct at Kansas.

### c.      Brunt Of Injury Felt In Forum State

Plaintiff must also demonstrate that defendants committed the intentional act with knowledge that the brunt of the injury would be felt in the forum state.   See Dudnikov, 514 F.3d at 1072.   When defendants sent the erroneous violation notice to plaintiff in Kansas, they knew that he would feel the brunt of any injury in Kansas.   This is particularly true in light of the Village's assertion that the Kansas Secretary of State provided the erroneous vehicle owner information to SafeSpeed.   Having queried Kansas about vehicle owner information, defendants necessarily knew that any alleged injury would be felt in Kansas.

Based on the foregoing analysis, the Court finds that plaintiff has adequately alleged that defendants purposefully directed their activities to the forum state, i.e. Kansas.   Accordingly, plaintiff has shown sufficient minimum contacts to confer personal jurisdiction over defendants.

### 2.      Traditional Notions Of Fair Play And Substantial Justice

Where defendants have minimum contacts with the forum state, the Court must determine whether assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice.   See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Dental Dynamics, 946 F.3d at 1229.   To do so, the Court considers the following factors: (1) the burden on defendants; (2) the forum state's interest in resolving the dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) the interest of the interstate judicial system in obtaining the most efficient resolution of controversies and (5) the shared interest of the states in furthering fundamental social policies.   Dental Dynamics, 946 F.3d at 1229.   Defendants' showing under these factors operates on a "sliding scale."   Id.   The weaker plaintiff's showing

-11-

with respect to minimum contacts, the less defendants must show in terms of unreasonableness to defeat jurisdiction.   Id.

### a.        Burden On Defendants

As to the first factor, defendants argue that defending this case in Kansas will impose a significant burden because they have no office, property, employees or other consistent connection to the State of Kansas.

To overcome the justification for the exercise of jurisdiction on this basis, the inconvenience to defendants must be "so great as to constitute a deprivation of due process." Rainy Day Books, Inc. v. Rainy Day Books & Cafe, LLC, 186 F. Supp. 2d 1158, 1166 (D. Kan. 2002).   Here, it is not constitutionally unreasonable to require defendants to defend this action in Kansas, particularly "[i]n this era of Internet communications, faxes, telecommunications, and relatively inexpensive travel." Id.; see also Brooke Credit Corp. v. Texas Am. Insurers, Inc., No. 06-1367-JTM, 2007 WL 1586082, at *5 (D. Kan. May 31, 2007); Hutton & Hutton Law Firm, LLC v. Girardi & Keese, 96 F. Supp. 3d 1208, 1225 (D. Kan. 2015). The Court is not persuaded that exercising personal jurisdiction over defendants will impose a substantial burden.

### b.        Forum State Interest In Resolving Dispute

As to the second factor, the Village concedes that Kansas has an interest in providing a forum for plaintiff.   SafeSpeed asserts that "Kansas likely is not interested in interfering in the exercise of police powers by an Illinois municipality."[8] Defendant's Reply In Support Of Its

---

[8]        Defendants also argue that federal law and Illinois law govern this dispute, so Kansas does not have an interest in it.   As explained below, however, Kansas law governs plaintiff's state law claims.

Motion To Dismiss Plaintiff's Amended Complaint As To SafeSpeed (Doc. #38) filed April 15, 2020 at 8.   Kansas has an important interest, however, in providing a forum for Kansans to seek redress of injuries caused by out-of-state actors.   Hutton & Hutton Law Firm, 96 F. Supp. 3d at 1225–26.   This factor weighs in favor of plaintiff.

     **c.**      **Plaintiff's Interest In Receiving Convenient And Effective Relief**

Defendants assert that plaintiff has not demonstrated that he cannot seek convenient or effective relief in Illinois.   Plaintiff asserts that requiring him to travel to Illinois would be unjust and that courts in Kansas have a lighter caseload, which betters his chances of swift relief. Generally, this factor will weigh heavily in favor of plaintiff if forcing him to litigate in another forum will greatly diminish his chances of recovery because of that forum's laws, or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.   OMI Holdings, Inc., 149 F.3d at 1097 (citation omitted).   Here, although plaintiff would prefer to bring this action in his home state and avoid the inconvenience of travel, he has not demonstrated that litigating in Illinois would cause an overwhelming burden.

     **d.**      **Efficiency Interest Of Interstate Judicial System**

The fourth factor requires the Court to examine "whether the forum state is the most efficient place to litigate the dispute."   Id.   This inquiry looks to the location of witnesses and the underlying wrong, which state's substantive law governs the case and whether jurisdiction is necessary to prevent piecemeal litigation.   Id.   Here, the parties dispute where the majority of relevant witnesses and evidence are located.   Defendants assert that other than plaintiff, all of the witnesses and records are located in Illinois.   Plaintiff contends that many relevant witnesses are located in Kansas and Illinois.   Plaintiff also asserts that the wrongs committed in this lawsuit occurred in Kansas—i.e. where he received the erroneous violation notice—and that Kansas law

will apply to his state law claims.   Defendants assert that the wrongs occurred in Illinois—where the Village issued the traffic citation—and that Illinois law applies.

In a tort action, Kansas courts apply the doctrine of lex loci delicti, meaning "the law of the place where the tort was committed" or where the wrong occurred.   Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC, 309 F. Supp. 3d 1022, 1031 (D. Kan. 2018).   Where the wrong occurred is generally considered to be the place where the injury was suffered.   Id.   Here, the place of the wrong is Kansas, where plaintiff received the erroneous notice and suffered the alleged injury.

Witnesses and evidence are in both Kansas and Illinois, Kansas law applies to plaintiff's state law claims and plaintiff suffered the alleged injury in Kansas.   On these facts, the Court is not convinced that Illinois is the most efficient place to litigate the dispute.

**e.    Shared Interest Of States In Fundamental Social Policies**

The final factor the Court considers is the shared interest of Illinois and Kansas in furthering fundamental substantive social policies.   SafeSpeed asserts that Illinois has an interest in ensuring that lawsuits brought outside of its territorial boundaries will not be used to limit or affect the exercise of its inherent police powers.   The Village asserts that states will hesitate to enforce their traffic laws against out-of-state drivers if doing so subjects them to personal jurisdiction in other states.   In response to SafeSpeed, plaintiff asserts that this factor is not relevant to this case.   In response to the Village, plaintiff asserts that not allowing him to litigate his dispute in this Court would hinder the fundamental social policy of allowing residents to sue in the forum in which they are harmed.

On balance, this factor is neutral.   While states undoubtedly have an interest in enforcing their traffic laws, it is not clear that that interest is at stake in this case and although Kansas has an

interest in providing a forum for plaintiff, the Court has already considered that fact in its analysis.

Considering all five factors together, the Court finds that it is reasonable and consistent with notions of "fair play and substantial justice" to assert personal jurisdiction over defendants. This is particularly so in view of the lightness of plaintiff's burden of establishing personal jurisdiction at this early stage of litigation.   See AST Sports Sci., Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1056 (10th Cir. 2008).   The Court therefore overrules defendants' motions to dismiss for lack of personal jurisdiction.

## II.   <u>Venue</u>

The Court considers a motion to dismiss for improper venue under Rule 12(b)(3), Fed. R. Civ. P.   See Neonatal Prod. Grp., Inc. v. Shields, No. 13-2601-DDC, 2017 WL 3116686, at *2 (D. Kan. July 20, 2017).   Generally, the standards for deciding a motion to dismiss for improper venue are the same as for a motion to dismiss for lack of personal jurisdiction.   Id.   When defendants challenge venue, plaintiff bears the burden of making a prima facie showing that venue is proper.   Black & Veatch Constr., Inc. v. ABB Power Generation, Inc., 123 F. Supp. 2d 569, 572 (D. Kan. 2000).   The Court resolves all factual disputes in plaintiff's favor.   Id.   In ruling on such a motion, the Court may consider matters outside the pleadings without converting it to a motion for summary judgment.   Topliff v. Atlas Air, Inc., 60 F. Supp. 2d 1175, 1176–77 (D. Kan. 1999).

Defendants assert that the Court should dismiss the amended complaint for improper venue.   Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   As noted, plaintiff received the erroneous violation notice in Kansas and felt the brunt of defendants' allegedly tortious conduct

in Kansas.   In other words, a substantial part of the events which give rise to his claims occurred in Kansas.   Accordingly, venue is proper in Kansas.

## III.   <u>Failure To State A Claim</u>

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief.   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).   To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.   <u>Id.</u> at 679–80; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).   In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.   <u>Iqbal</u>, 556 U.S. at 679.   The Court need not accept as true those allegations which state only legal conclusions.   <u>See</u> <u>id.</u>

Plaintiff bears the burden of framing his claim with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.   <u>See</u> <u>Twombly</u>, 550 U.S. at 556.   Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the misconduct he alleges.   <u>Iqbal</u>, 556 U.S. at 678.   Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.   <u>Id.</u>   (quoting <u>Twombly</u>, 550 U.S. at 557).   A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.   <u>Iqbal</u>, 556 U.S. at 678.   Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.   <u>Id.</u> at 679.

-16-

When ruling on a Rule 12(b)(6) motion, the Court does not analyze potential evidence that the parties might produce or resolve factual disputes.  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).   The Court accepts well-pleaded allegations as true and views them in the light most favorable to the non-moving party.  Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).   In addition to the complaint, however, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting Jacobsen, 297 F.3d at 941).

SafeSpeed asserts that the Court should dismiss plaintiff's claims under Rule 12(b)(6) for failure to state a claim.   In addition, it seeks dismissal on the ground that it carries out a government function on behalf of the Village and therefore is immune from suit under the public official immunity doctrine.   The Village asserts that the Court should dismiss plaintiff's request for class certification.[9]   The Court first considers SafeSpeed's immunity argument, then addresses whether the Court should dismiss any of plaintiff's claims under Rule 12(b)(6).

### A.      Public Official Immunity

SafeSpeed argues that it is entitled to "public official immunity" under state common law because it exercises discretion in helping the Village administer the red-light camera program.[10]

---

[9]      The Village's motion to dismiss only addresses jurisdiction, venue and class certification, and states that it "reserves its right to move to dismiss the individual counts of Plaintiff's Amended Complaint on the basis of failure to state a claim under Rule 12(b)(6) should this Court refuse to dismiss this Defendant under Rules 12(b)(2) and (b)(3)."   Defendant Village Of North Riverside, Illinois' Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #34) at 2.   Because the Village has not asserted any substantive arguments for dismissal of plaintiff's claims under Rule 12(b)(6), the Court considers plaintiff's substantive claims only as they pertain to SafeSpeed, and plaintiff's claims against the Village (Counts II, III and IV) remain in the case.

[10]      SafeSpeed does not claim that it is entitled to statutory immunities.

In support of its argument, SafeSpeed relies on <u>Filarsky v. Delia</u>, 566 U.S. 377, 380 (2012), in which the United States Supreme Court addressed whether an employee who works for the government on something other than a permanent or full-time basis is eligible for qualified immunity in a Section 1983 action.   Citing one case from the Supreme Court of Minnesota and two cases from the Texas Court of Appeals, SafeSpeed asserts that many state courts have applied <u>Filarsky</u> to find that "public official immunity" is available to government officials under state common law.   SafeSpeed does not cite any authority in which a court applying Kansas law has embraced the reasoning in <u>Filarsky</u> in a way that would be relevant in this case, and the Court finds that it is not.

In one sentence, SafeSpeed also argues that Kansas courts recognize public official immunity under the common law.[11]   Regardless whether Kansas courts recognize public official immunity as an abstract legal proposition, the record is unclear who is exercising what discretion in administering the red-light camera program.   SafeSpeed cannot argue both that it has no discretion over who receives a violation notice because the Village makes that decision, and that it is entitled to immunity based on its exercise of discretion in who receives them.   At this stage, SafeSpeed has not carried its burden of demonstrating that it is entitled to immunity.

### B.    ADA Claim Against SafeSpeed (Count I)

In 1990, Congress enacted the ADA to remedy widespread discrimination against disabled individuals.   <u>PGA Tour, Inc. v. Martin</u>, 532 U.S. 661, 674 (2001).   To achieve its sweeping

---

[11]    Specifically, SafeSpeed cites <u>Kern v. Miller</u>, 533 P2d 1244, 1248 (Kan. 1975), and <u>Hendrix v. City of Topeka</u>, 643 P.2d 129, 134 (Kan. 1982).   SafeSpeed also cites an Illinois state court case which the Court does not address because Kansas law, not Illinois law, applies to plaintiff's claims.

purpose, the ADA prohibits discrimination on the basis of disability in major areas of public life, including employment (Title I), public services (Title II) and public accommodations (Title III). Id. at 675.   In Count I, plaintiff asserts a public accommodation discrimination claim against SafeSpeed under Title III of the ADA.

The "[g]eneral rule" of Title III is that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."   42 U.S.C. § 12182(a). Title III defines "public accommodation" in terms of categories of facilities which private entities lease or operate "if the operations of such entities affect commerce."   42 U.S.C. § 12181(7). Specifically, the categories of "public accommodation[s]" are as follows:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). Courts should liberally construe the categories of public accommodations to afford disabled persons equal access to the wide variety of establishments to which non-disabled persons have access. PGA Tour, 532 U.S. at 666–67; Levorsen v. Octapharma Plasma, Inc., 828 F.3d 1227, 1234 n.8 (10th Cir. 2016) (goal of ADA to afford individuals with disabilities access to same establishments available to those without disabilities).

Subsection (b)(1) of Section 12182 elaborates on the general rule against discrimination set forth in Section 12182(a) by specifically prohibiting discrimination on the basis of disability for an individual or class of individuals by (i) denying opportunity to participate, (ii) providing unequal opportunity to participate or (iii) providing a separate benefit. See 42 U.S.C. § 12182(b)(1)(A)(i)–(iii).

The parties do not dispute that plaintiff is a disabled individual within the meaning of the ADA. Therefore, to state a claim under Title III, plaintiff must allege (1) that SafeSpeed is a private entity that owns, leases or operates a place of public accommodation and (2) that because of his disability, SafeSpeed denied plaintiff access to its accommodations, facilities, goods or services. See Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007); see also Shepherd v. U.S. Olympic Comm., 464 F. Supp. 2d 1072, 1090 (D. Colo. 2006) (prima facie elements of ADA

claim depend on number of factors, including alleged theory of discrimination), aff'd sub nom. Hollonbeck v. U.S. Olympic Comm., 513 F.3d 1191 (10th Cir. 2008).

Here, plaintiff alleges that SafeSpeed is a "service establishment" under Section 12181(7)(F) and that it denies individuals with disabilities "the ability to not be wrongfully ticketed," which is a service that SafeSpeed allegedly offers to the general public.[12]  Amended Complaint (Doc. #15) at 9–10.

As noted, Section 12182 of Title III prohibits discrimination against certain persons—i.e., "individuals" who seek "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a). Under Section 12181(7)(F), a "service establishment" is a place of public accommodation.  The Tenth Circuit defines a "service establishment" as a "place of business or a public or private institution that, by its conduct or performance, assists or benefits someone or something or provides useful labor without producing a tangible good for a customer or client."  Levorsen, 828 F.3d at 1231.

Here, accepting plaintiff's allegations as true, SafeSpeed qualifies as a "service establishment" because it provides an informational service to members of the public who allegedly violate traffic laws, and it assists and benefits them by providing photographic verification of alleged violations.  See id. (service is "conduct or performance that assists or benefits someone or something," or "useful labor that does not produce a tangible commodity")

_____

[12]    In response to SafeSpeed's motion to dismiss, plaintiff adds that SafeSpeed's service is providing red-light camera technology, reviewing videos of red-light violations, obtaining registration information and hiring agents to print and mail notices of violation." Response To Defendant SafeSpeed's Motion To Dismiss Plaintiff's Amended Complaint (Doc. #21) filed March 13, 2020 at 17.

(citing Webster's Third New International Dictionary 2075 (2002)).   In plaintiff's case, the photographic verification of his alleged traffic violation "assist[ed] or "benefit[ted]" him because it definitively showed that he was innocent of the offense.[13]

SafeSpeed argues that plaintiff has not sufficiently alleged that it is a public accommodation because he has not alleged that SafeSpeed operates a physical place where it welcomes customers or the public to purchase goods or receive services.[14]   See Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's Amended Complaint As To SafeSpeed (Doc. #20) filed February 21, 2020 at 17.   In support of its argument, SafeSpeed cites several cases in which courts in other circuits have found that "public accommodation[s]" under Title III are limited to actual physical places.

Here, the Court need not determine whether "public accommodation[s]" refers only to brick-and-mortar storefronts.   SafeSpeed has a physical location and it provides an informational service to drivers and accused traffic offenders from that physical location—i.e. its offices in Chicago.   See Declaration of Chris Lai (Doc. #20-1) at 1 ("SafeSpeed, LLC is an Illinois limited liability company with its only offices located in Chicago, Illinois")); see also Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's Amended Complaint As To SafeSpeed (Doc. #20) at 5 ("SafeSpeed conducts all of its operations in Illinois, where its

---

[13]   The photograph on the violation notice shows a truck with a Kansas license plate that does not belong to plaintiff.

[14]   Notably, SafeSpeed does not argue that it does not in fact have a physical location. Rather, it argues only that plaintiff did not allege its physical location.   Indeed, its brief states that "SafeSpeed conducts all of its operations in Illinois, where its offices are located."   Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's Amended Complaint As To SafeSpeed (Doc. #20) at 5.

offices are located."). In addition, in a way, each red-light camera is a physical location from which a driver receives SafeSpeed's informational services.

Furthermore, SafeSpeed does not explain how it fails to qualify as a physical location. It merely cites cases which hold that "public accommodation" is limited to physical places and states that plaintiff has not alleged its physical location. See Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's Amended Complaint As To SafeSpeed (Doc. #20) at 16–17. Beyond a string cite of cases, SafeSpeed does not explain to the Court *why* it does not qualify as a physical location. At this early stage of the proceedings, and in view of the Court's duty to liberally construe the categories of Section 12181(7)(F), SafeSpeed has not persuaded the Court that it is not a public accommodation. See Levorsen, 828 F.3d at 1230, 1232 (court has duty to liberally construe categories in Section 12181(7)(F)).

Plaintiff also alleges that SafeSpeed discriminates against individuals by failing to ensure that its system does not wrongfully ticket them, and that it has created an environment in which an individual with a disability is significantly more likely to receive a wrongfully-issued violation notice than an individual who does not have a disability. He further alleges that SafeSpeed continues to discriminate by failing to remedy problems with its querying and verification process.

Here, SafeSpeed tagged plaintiff as a traffic offender because the license plate of the violator's vehicle matched the number on plaintiff's Disabled Identification Placard Number. To state the obvious, plaintiff has such a number because of his status as a disabled driver in Kansas. Presumably, if SafeSpeed had an effective method of reviewing alleged traffic violations, it could avoid wrongly accusing disabled individuals based on disability placards. At this stage, plaintiff has sufficiently alleged that by simply assigning the violation to plaintiff based on his Disabled Identification Placard Number, SafeSpeed discriminated against him because of his disability.

The Court therefore overrules SafeSpeed's motion to dismiss Count I.

### C.    Negligence Against SafeSpeed (Count III)

In Count III, plaintiff asserts that defendants have a duty to properly query vehicle owner databases and verify that the information is correct before issuing violation notices.   He asserts that by failing to verify the information of violators, defendants breach this duty and proximately cause plaintiff and the Wrongfully-Issued Subclass "damages in an amount to be proven at trial." Amended Complaint (Doc. #15) at 11–12.

SafeSpeed asserts that (1) the economic loss doctrine bars plaintiff's negligence claim because he only seeks monetary relief and that (2) under the public duty doctrine, SafeSpeed does not owe a legal duty to plaintiff or putative class members.

### 1.    Economic Loss Doctrine

Kansas courts have adopted the economic loss doctrine, which "sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  Freedom Transportation, Inc. v. Navistar Int'l Corp., No. 18-02602-JAR, 2019 WL 4689604, at *23 (D. Kan. Sept. 26, 2019) (citation omitted), motion to certify appeal denied, No. 18-02602-JAR, 2020 WL 108670 (D. Kan. Jan. 9, 2020).   The doctrine prevents parties "from asserting a tort remedy in circumstances governed by the law of contracts."   BHC Dev., L.C. v. Bally Gaming, Inc., 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) (citation omitted).   In effect, this means that plaintiff cannot recover under tort theories if his claims are actually based in contract. In other words, if plaintiff's claims arise under the contract—"as opposed to an independent duty arising by operation of law"—plaintiff cannot assert tort claims to recover economic damages. Rand Const. Co. v. Dearborn Mid-W. Conveyor Co., 944 F. Supp. 2d 1042, 1062 (D. Kan. 2013);

see also Pipeline Prods., Inc. v. Madison Companies, LLC, No. 15-4890-KHV, 2020 WL 1274968, at *4 (D. Kan. Mar. 17, 2020).

Here, plaintiff has not alleged a contract between plaintiff and SafeSpeed.  He plainly seeks damages for an injury which sounds in tort law, not contract law.   In other words, he is not "asserting a tort remedy in circumstances governed by the law of contracts."   BHC Dev., 985 F. Supp. 2d at 1287 (citation omitted).   The economic loss doctrine does not bar plaintiff's negligence claim.

## 2.    Duty

To state a claim for negligence under Kansas law, plaintiff must allege (1) the existence of a duty; (2) breach of that duty; (3) injury; and (4) a causal connection between plaintiff's injury and the duty breached.   Schmelzle v. Wal–Mart, Inc., 230 F. Supp. 2d 1254, 1259 (D. Kan. 2002) (citing Honeycutt ex rel. Phillips v. City of Wichita, 251 Kan. 451, 463, 836 P.2d 1128, 1136 (1992)).   Under the liberal notice pleading standards of Rule 8(a), Fed. R. Civ. P., plaintiff must at a minimum allege sufficient underlying facts from which the Court may find the existence of a duty.   See Sheldon v. Vermonty, 31 F. Supp. 2d 1287, 1296 (D. Kan. 1998); see also Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

As noted, plaintiff alleges that SafeSpeed owed a duty to plaintiff, the class and the public to properly query the Illinois Secretary of State and Nlets regarding driver information, to verify that the information it receives is accurate, and to confirm the identity of an alleged traffic law violator before issuing violation notices.   Amended Complaint (Doc. #15) at 11–10.

SafeSpeed seeks dismissal of plaintiff's negligence claim on the ground that plaintiff has not established that it owed him a duty.   Specifically, SafeSpeed asserts that it "assist[s] the Village in carrying out governmental duties when it provides services in support of the Village's

red light camera program," and that under the public duty doctrine, it does not owe a duty to plaintiff or putative class members.   Memorandum In Support Of Motion To Dismiss (Doc. #20) at 19.

Generally, under the public duty doctrine as recognized by Kansas law, government entities and their employees owe a duty to the public at large and not to any particular individual, and government entities are not liable for torts in absence of a special duty owed to the injured party. Mills v. City of Overland Park, 251 Kan. 434, 446, 837 P.2d 370, 379 (1992).

SafeSpeed cites no authority to support its assertion that "assisting" the Village is sufficient to invoke the public duty doctrine.   Based on the Court's research, whether the public duty doctrine extends to SafeSpeed turns on whether it acts as "an employee or agent carrying out the orders and directions of the city and its officials" or whether it is an "independent contractor" that exercises independent judgment in carrying out its work.   See Warren v. City of Topeka, 125 Kan. 524, 265 P. 78, 80 (1928) (public duty doctrine applies to individual with city contract because city had "absolute supervision and control").   If SafeSpeed is subject to the Village's complete control, then perhaps the public duty doctrine would apply to it.   On the other hand, if it exercises independent judgment in its work, then the doctrine would likely not protect it.[15]

In light of the parties' disagreement regarding the relationship between SafeSpeed and the Village, and without the benefit of adequate briefing, the Court cannot accept SafeSpeed's bare assertion that the public duty doctrine bars plaintiff's negligence claim.

Plaintiff has sufficiently alleged that SafeSpeed owed him a duty to properly query the

---

[15]   The parties' failed to direct the Court to relevant authority regarding why SafeSpeed qualifies or does not qualify for the public duty doctrine.

Illinois Secretary of State and Nlets regarding driver information, to verify that the information it receives is accurate and to confirm the identity of an alleged traffic law violator before issuing a violation notice.   The Court therefore overrules SafeSpeed's motion to dismiss Count III.

### D.   Malicious Prosecution Against SafeSpeed (Count IV)

In Count IV, plaintiff asserts a malicious prosecution claim against SafeSpeed on behalf of all members of the Wrongfully-Issued Subclass whose violations were dismissed.   He asserts that in sending wrongfully-issued violation notices, SafeSpeed acted without probable cause, with "reckless disregard" and with malice.   Plaintiff asserts that he and the Wrongfully-Issued Subclass sustained damages of substantial time and effort getting defendants to dismiss their respective wrongfully-issued violation notices.   Amended Complaint (Doc. #15) at 12.

SafeSpeed asserts that the Village—not SafeSpeed—initiated an action against plaintiff, that plaintiff did not allege facts which demonstrate that the Village acted without probable cause in issuing the violation notice to plaintiff and that plaintiff has not sufficiently alleged that SafeSpeed acted with malice.

Under Kansas law, a claim for malicious prosecution requires a factual showing that (1) defendant initiated, continued or procured the proceeding of which complaint is made; (2) defendant in doing so acted without probable cause; (3) defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff sustained damages.   Tappen v. Ager, 599 F.2d 376, 378 (10th Cir. 1979); Van Keppel v. Fly Ash Mgmt., L.L.C., No. 97-2681-KHV, 1998 WL 596726, at *4 (D. Kan. Aug. 3, 1998).

As to the first element, plaintiff has sufficiently alleged that SafeSpeed procured the proceedings against him by wrongly identifying him as a traffic violator and mailing the violation notice to him.

As to the second element, plaintiff has sufficiently alleged that SafeSpeed acted without probable cause.   Probable cause for instituting a proceeding exists if defendant had a "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or prudent, man in the belief that the party committed the act."   Holick v. Burkhart, 388 F. Supp. 3d 1370, 1382 (D. Kan. 2019) (citation and internal quotation marks omitted).   This inquiry is generally limited to the facts and circumstances as they appeared to defendants when they commenced the proceeding, i.e. when they issued the violation notice.   Id.   A party has probable cause if it "reasonably believes in the existence of the facts upon which the claim is based" and correctly or reasonably believes that under those facts the claim may be valid under the applicable law.   Id. (citing Restatement (Second) of Torts, § 675).   Plaintiff alleges that SafeSpeed failed to properly query the Illinois Secretary of State and Nlets and failed to verify that the vehicle registration information it received was correct.   Presumably, if SafeSpeed had acted reasonably cautiously, it would not have mailed a violation notice to an individual who was not even driving in the Village at the time of the traffic violation.   Plaintiff's allegation satisfies this element.

As to the third element, plaintiff has sufficiently alleged that SafeSpeed acted with malice. For purposes of a malicious prosecution claim, plaintiff may show malice by alleging that SafeSpeed "acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based."   Nelson v. Miller, 227 Kan. 271, 276, 607 P.2d 438, 443 (1980) (citation omitted).   Existence of malice or wrongful purpose is ordinarily a question of fact for a jury, and a jury may infer malice from the absence of probable cause.   Id. at 279.   Because plaintiff has sufficiently alleged that SafeSpeed acted without probable cause, an inference of malice arises that is sufficient to satisfy this element.   See id.; see also Cruz v. City

-28-

of Merriam, Kan., 21 F. Supp. 3d 1177, 1183 (D. Kan. 2014) (common law tort of malicious prosecution allows inference of malice from absence of probable cause).

As to the fourth element, plaintiff has sufficiently alleged that the proceedings terminated in his favor (and in favor of the Wrongfully-Issued Subclass).   Civil proceedings are terminated in favor of the person against whom they are brought when (1) a competent tribunal favorably adjudicates the claim, (2) the person who brings the proceedings withdraws them or (3) the proceedings are dismissed for failure to prosecute.   Nelson, 227 Kan. at 280.   Here, the Village withdrew proceedings against plaintiff and the relevant subclass members by dismissing their tickets.[16]

Finally, as to the fifth element, plaintiff alleges that he and the subclass sustained damages in the form of substantial time and effort obtaining dismissal of their respective wrongfully-issued violation notices.   At this stage, plaintiff's allegation of damages is sufficient.

Plaintiff has sufficiently stated a claim of malicious prosecution against SafeSpeed.   The Court therefore overrules SafeSpeed's motion to dismiss Count IV.

### E.     Class Certification

Without citation to relevant authority, the Village asserts that pursuant to Rule 12(b)(6), the Court should dismiss plaintiff's request for class certification because it is based on conclusory allegations.   Plaintiff asserts that at this stage, consideration of whether a class action is appropriate is premature.

Consideration of whether plaintiff's class action allegations are sufficient under Rule 23,

---

[16]     As noted, plaintiff brings Count IV on behalf of "all members of the Wrongfully-Issued Subclass whose violations were dismissed."   Amended Complaint (Doc. #15) at 12.

Fed. R. Civ. P., is not appropriate at the motion to dismiss stage.   See Anderson Living Tr. v. ConocoPhillips Co., LLC, 952 F. Supp. 2d 979, 1058 (D.N.M. 2013) (improper to seek class denial by means of motion to dismiss).   The Court will make such determination at the class certification phase.   Accordingly, the Court overrules the Village's motion to dismiss plaintiff's class action allegations under Rule 12(b)(6).

### Conclusion

**IT IS THERFORE ORDERED** that Defendant Safespeed, LLC's Motion To Dismiss Amended Complaint (Doc. #19) filed February 21, 2020 is **OVERRULED.**

**IT IS FURTHERED ORDERED** that Defendant Village Of North Riverside, Illinois' Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #34) filed April 8, 2020 is **OVERRULED**.

Dated this 4th day of August, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge